| | |
|---|---|
| JOSEPH REID, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | No. 15-14048-JGD |
| CENTRIC CONSULTING, LLC, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OF DECISION AND ORDER ON
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

March 29, 2018

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Joseph Reid, was an employee of the defendant, Centric Consulting, LLC ("Centric"), during the period of December 9, 2013 to June 19, 2015, when his employment was terminated, allegedly for performance related issues. After he had been put on a performance plan, Mr. Reid requested and obtained 17 consecutive weeks of medical leave, from November 19, 2014 through March 20, 2015, at which point he returned to work. Although it was subsequently determined that Centric was not covered by the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"), Centric incorrectly labeled the middle 12 weeks of Mr. Reid's leave as FMLA leave, and so advised Mr. Reid. After his employment was terminated, Mr. Reid brought a one count complaint alleging that his employment was terminated in retaliation for his having taken FMLA leave.

After basic discovery was completed, and in an effort to streamline this litigation, the parties agreed to present to the court, by way of a motion for summary judgment, the issue of whether the plaintiff can maintain a retaliation claim under the FMLA if he was not, in fact, entitled to FMLA leave. Centric argues that the plaintiff cannot maintain a retaliation claim as a matter of law, while the plaintiff contends that Centric can be equitably estopped from denying him the fully panoply of rights provided by the FMLA.

For the reasons detailed herein, this court finds that while the law is unsettled in this area, it is more likely that the First Circuit would rule that there are circumstances where the doctrine of equitable estoppel could apply to a retaliation claim. Therefore, the defendant's Motion for Summary Judgment (Docket No. 23) is DENIED. However, based on the facts presented, which include, without limitation, the fact that the plaintiff took both FMLA and non-FMLA leave to cover his medical needs, it is questionable that the plaintiff can establish that he relied on any representation as to the applicability of the FMLA to his detriment. Therefore the court will hold a status conference to discuss whether it would be appropriate to proceed with another motion for summary judgment on the applicability of the doctrine of equitable estoppel to the retaliation claim before reopening discovery.

## II. <u>STATEMENT OF FACTS</u>[1]

Mr. Reid began his employment with Centric on December 9, 2013 as a business developer, working from his home in Winchester, Massachusetts. Centric had fewer than 50

---

[1] These facts are uncontested and are derived from Section B of defendant's "Memorandum of Law and Statement of Undisputed Facts in Support of its Motion for Summary Judgment" (Docket No. 24) ("Def. Mem."). The plaintiff explicitly confirmed that these facts were undisputed, for purposes of summary judgment only, in his "Opposition to Defendant Centric Consulting, LLC's Motion for Summary Judgment" (Docket No. 25) ("Pl. Opp.").

2

employees working within a 75-mile radius of Mr. Reid's worksite at all times before, during, and after Mr. Reid's employment with Centric. Given this number of employees, Centric was not covered by the FMLA.[2] Nevertheless, as detailed herein, Centric's human resources department ("HR") treated Mr. Reid's request for a medical leave as if it were covered by the FMLA.

In September 2014, Centric presented Mr. Reid with a performance improvement plan ("PIP") because of Mr. Reid's lack of sales and other deficiencies. Mr. Reid received a written copy of the PIP on September 30, 2014 and corresponded with Centric's management about the plan on October 3, 2014.

On October 7, 2014, Mr. Reid inquired of HR about a possible need for medical leave. Centric's management was unaware of any medical issue before this initial inquiry. In response to Mr. Reid's inquiry about the availability of FMLA leave in October 2014, HR informed Mr. Reid that he would be ineligible for FMLA leave until December 9, 2014 (after completing the requisite 12 months of employment with Centric to be eligible for FMLA).[3] However, HR noted, Centric had other non-FMLA leave options available for disability, including short-term and long-term disability leave. Mr. Reid requested and was granted a non-FMLA leave of absence by Centric, using paid time off, for surgery and recovery beginning November 19, 2014.

---

[2] See 29 U.S.C. § 2611(2)(B)(ii) ("The term 'eligible employee' does not include…any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50.").

[3] 29 U.S.C. § 2611(2)(A)(i) ("'eligible employee' means an employee who has been employed…for at least 12 months by the employer with respect to whom leave is requested….").

Starting on December 9, 2014, at Centric's encouragement, Mr. Reid's leave of absence continued without interruption as "FMLA leave" and continued for the full 12 weeks until March 2, 2015. At that point, Mr. Reid was permitted by Centric to continue his leave of absence without interruption by switching back to "non-FMLA leave" for more than two additional weeks through March 20, 2015. Mr. Reid received the full 12 weeks of FMLA leave benefits and reinstatement from Centric as if Mr. Reid was an "eligible employee" under the FMLA. Centric would have provided the exact same leave and benefits to accommodate Mr. Reid's surgery and recovery, even if it had not voluntarily approved Mr. Reid for "FMLA leave."

Upon his return to work on March 20, 2015, Mr. Reid resumed the PIP with the same sales requirements as were originally designated before the leave of absence. On June 19, 2015, Centric terminated Mr. Reid's employment for what Centric attributes to Mr. Reid's failure to meet the PIP goals, which had been set for him before he requested medical leave. Mr. Reid challenges this explanation for his termination. Rather, he has brought a complaint alleging that his termination was in retaliation for exercising the rights afforded under the FMLA.

The parties agree that Mr. Reid was not an "eligible employee" entitled to receive benefits under the FMLA. He claims that since Centric treated him as FMLA-eligible, it is estopped from arguing ineligibility in defense of Mr. Reid's retaliation claim. (Pl. Opp. at 4). Centric argues that neither Mr. Reid nor any plaintiff "can maintain an FMLA retaliation claim without showing he was an 'eligible employee' under the statute, based on an equitable estoppel theory." (Def. Mem. at 4).

## III. ANALYSIS

### A. Rights Under the FMLA

"The First Circuit recognizes two distinct theories of recovery under the FMLA: (1) the interference theory arising under 29 U.S.C. § 2615(a)(1), which prohibits an employer from 'interfer[ing] with, restrain[ing], or deny[ing]' an employee's exercise, or attempt to exercise, a right provided by the statute; and (2) the retaliation theory under 29 U.S.C. § 2615(a)(2), which protects the employee from discrimination for exercising the statutory rights." Boadi v. Ctr. for Human Dev., Inc., 239 F. Supp. 3d 333, 343 (D. Mass. 2017) (citations omitted). "To be considered eligible for statutory protection [under the FMLA], the employee must have worked for a covered employer (1) for at least 12 months, (2) not less than 1,250 hours during the 12-month period immediately preceding the date the leave is taken; and (3) at a worksite where the employer employs at least 50 employees within 75 miles as of the date that notice of the need for leave was provided." Santana-Colon v. Houghton Mifflin Harcout Publ'g Co., 81 F. Supp. 3d 129, 132 (D.P.R. 2014) (citing 29 U.S.C. §§ 2611(2)(A) & 2611(2)(B)(ii), & McArdle v. Town of Dracut/Dracut Public Sch., 732 F.3d 29, 33 (1st Cir. 2013)).

Here, Mr. Reid has only requested relief under a theory of retaliation, not interference. Both parties agree that Mr. Reid was not considered an "eligible employee" under the statute because Centric employed fewer than 50 employees within a 75-mile radius of his worksite. (Def. Mem. ¶ 2).

### FMLA Retaliation

"To make out a *prima facie* case of FMLA retaliation, an employee must show: (1) [he] availed [himself] of a protected FMLA right; (2) [he] was adversely affected by an employment

decision; and (3) there was a causal connection between [his] protected conduct and the adverse employment action." Carrero-Ojeda v. Autoridad De Energia Electrica, 755 F.3d 711, 719 (1st Cir. 2014) (citation and punctuation omitted). In connection with the motion for summary judgment, the parties have asked the court to rule only on the first prong. It is undisputed that Mr. Reid's termination was an adverse employment action, and the question whether the third prong has been satisfied has been deferred pending a ruling as to whether a non-eligible employee can maintain a retaliation claim.

Centric argues that Mr. Reid cannot satisfy the first prong as a matter of law. It argues that Mr. Reid has not "availed himself of a protected FMLA right" since he was not eligible for any protected FMLA rights. Reid argues that although he is not an eligible employee, he can still maintain his claim under a theory of equitable estoppel: because Centric treated Mr. Reid as if he were eligible for FMLA leave, and classified 12 weeks of his leave as such, Centric is estopped from arguing that Mr. Reid's retaliation claim fails because he is not an eligible employee.

### **Equitable Estoppel in the First Circuit**

The First Circuit has recognized that a private employer may be equitably estopped from denying FMLA coverage to an employee even if the employee was otherwise ineligible for FMLA leave. See Nagle v. Acton-Boxborough Reg'l Sch. Dist., 576 F.3d 1, 3 (1st Cir. 2009) (employee may assert coverage under theory of equitable estoppel against a private employer, but not a governmental entity). In the context of an FMLA claim brought by an ineligible employee, "[t]he contours of [the] equitable estoppel doctrine . . . are conventional. The doctrine seeks to prevent injustice when an individual detrimentally and predictably relies on the

6

misrepresentation of another." Id. "[A] party seeking to assert estoppel must demonstrate that (1) the party to be estopped made a definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." Id. (punctuation omitted) (citing Mimya Hosp., Inc. SNF v. U.S. Dept. of Health & Human Servs., 331 F.3d 178, 182 (1st Cir. 2003)). "In order to assert estoppel, a party must show that it 'relied on its adversary's conduct in such a manner as to change [its] position for the worse.'" Mimiya Hosp., 331 F.3d at 182 (citing Heckler v. Cmty. Health Servs., 467 U.S. 51, 59, 104 S. Ct 2218, 2223-24, 81 L. Ed. 2d 42 (1984)). Centric argues that the doctrine of equitable estoppel can only be applied to an interference claim, and that it cannot apply to a retaliation claim. While jurisdictions are split on this issue, this court finds it more likely that the First Circuit would not apply that distinction to the facts presented here.

In McArdle v. Town of Dracut/Dracut Public Sch., an employee had not worked enough hours to qualify for FMLA leave. Nevertheless, he requested FMLA leave and was sent the paperwork, which he never completed, and he never formally requested FMLA leave. However, he did not go to work, and was terminated for abandoning his position. 732 F.3d at 30-32. He brought a retaliation claim under the FMLA, alleging "that he was fired not for taking the unsanctioned leave he took, but because he asked for FMLA leave." Id. at 35. In addressing the retaliation claim, the First Circuit held:

> **As an initial matter, it is not clear that one not entitled to take FMLA leave "avails himself of a protected right" when requesting to take such leave. The case law is both split and not fully developed regarding such an argument.** *Compare Walker v. Elmore Cnty. Bd. of Educ.,* 379 F.3d 1249,

7

> 1253 (11th Cir. 2004) (holding that eligibility is a prerequisite for a retaliation claim), *with Johnson v. Dollar Gen.,* 880 F. Supp. 2d 967, 991 (N.D. Iowa 2012) (criticizing *Walker* ); *see also Wilkins v. Packerware Corp.,* 260 Fed. Appx. 98, 102–103 (10th Cir. 2008) (surveying cases and describing the issue as "contestable").
>
> **We are not convinced that an employee who is ineligible for FMLA leave can never bring a retaliation claim.** There are many reasons why an employee will not know until inquiring whether he is eligible for any particular right available under the Act. The statute prohibits employer interference with both the exercise of rights provided under the FMLA and "the attempt to exercise any [such] right." 29 U.S.C. § 2615(a)(1). There is no requirement that the attempt be successful. **It would seem too, that firing an employee for asking would also frustrate the aims of the Act even if the inquiring employee turns out to be ineligible.** Such an "ask at your peril" approach could deter employees, including eligible employees uncertain of the extent of their rights, from taking the first step necessary to exercise their rights.
>
> In any event, in this case we need not decide whether an ineligible employee may never bring a retaliation claim under the FMLA if he is fired merely for asking if he is eligible. Here, the only reasonable reading of the record is that McArdle was not fired for asking to take FMLA leave. Rather, he was fired because the town concluded that his renewed and indefinite absence, without advance notice, allowed it to fire him.

Id. at 35-36 (emphasis added). Thus, the court recognized that while the application of the FMLA provision prohibiting retaliation to ineligible employees is an open question, there are public policy reasons for applying the doctrine of equitable estoppel to retaliation claims.

In Nagle v. Acton-Boxborough Reg'l Sch. Dist., an employee claimed that her absences were excused because she had taken leave which had been represented to her to be FMLA leave, and that she was fired for taking such leave. 576 F.3d at 1-2. The First Circuit did not make a distinction between the application of the doctrine of equitable estoppel to an interference claim as opposed to her retaliation claim. Rather, it stated that "[i]f the school district were a private employer, Nagle would be entitled to a trial as to whether [her

8

employer] did misrepresent matters, as to her reliance and on the reasonableness of any such reliance[.]" Id. at 3. In sum, there is no First Circuit precedent to limit the application of equitable estoppel to interference claims. Moreover, there are strong policy reasons to hold otherwise. It would defeat the basic purpose of applying the doctrine of equitable estoppel if an employee was allowed to rely on an employer's misrepresentation to take leave, but could then be fired for doing so. See Santana-Colon, 81 F. Supp. 3d at 133-34 (implicitly recognizing that equitable estoppel doctrine may be applied to both interference and retaliation claims, depending on the representation). This court declines Centric's request to rule, as a matter of law, that an ineligible employee cannot bring a retaliation claim under any circumstances. Therefore, the defendant's motion for summary judgment is denied.

### B. Application of Equitable Estoppel to the Instant Case

Neither party has addressed the application of the equitable estoppel doctrine to the instant case. Based on the undisputed facts, however, it is questionable whether Mr. Reid can establish that he relied on the fact that he was entitled to FMLA leave to his detriment. The same leave was available to Mr. Reid under company policy, regardless whether he qualified under the FMLA. He asked for leave due to a serious medical condition, and took both "FMLA" leave and non-FMLA leave. There does not seem to be anything that Mr. Reid "could or would have done differently had [Centric] told him . . . that he was not eligible for FMLA leave." McArdle, 732 F.3d at 34. The court will hold a status conference to discuss whether it would be appropriate to proceed on another motion for summary judgment to discuss the applicability of the doctrine of equitable estoppel to Mr. Reid's retaliation claim, before reopening discovery.

## IV. **CONCLUSION**

For all the reasons detailed herein, Defendant's Motion for Summary Judgment (Docket No. 23) is DENIED.

                                                                 / s / Judith Gail Dein
                                                                  Judith Gail Dein
                                                                 United States Magistrate Judge